# EXHIBIT 10

Page 1

1                     STATE OF MICHIGAN

2          IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

3    _____

4    LINT CHIROPRACTIC, DIAGNOSTIC

5    CHIROPRACTIC MI, P.C., and

6    SUPPLIES PLUS MI, LLC.,

7              Plaintiffs,

8        v.                            Case No.

9    THE LIBERTY SURPLUS INSURANCE,      22-014214-NF

10   CORPORATION, a foreign insurance

11   corporation,

12             Defendant.

13   _____

14             VIDEOCONFERENCE DEPOSITION OF

15                    JULIE STRIEF

16   DATE:         Wednesday, October 11, 2023

17   TIME:         2:01 p.m.

18   LOCATION:     Remote Proceeding

19                 Southfield, MI 48075

20   REPORTED BY:  Priscilla Gibbs, Notary Public

21

22

23

24

25   Job No. CS6109209

Page 2

1                    A P P E A R A N C E S

2    ON BEHALF OF PLAINTIFFS LINT CHIROPRACTIC, DIAGNOSTIC

3    CHIROPRACTIC MI, P.C., AND SUPPLIES PLUS MI, LLC:

4          JAMES EKLEBERRY, ESQUIRE (by videoconference)

5          Wigod & Falzon, P.C.

6          25899 W. 12 Mile Road, Suite 200

7          Southfield, MI 48034

8          james@falzonlaw.com

9          (248) 356-3300

10

11   ON BEHALF OF DEFENDANT THE LIBERTY SURPLUS INSURANCE

12   COMPANY:

13         DAVID J. LANKFORD, ESQUIRE (by videoconference)

14         Law Offices of Greig, Kennedy, Seifert and

15         Fitzgibbons

16         P.O. Box 6835

17         Scranton, PA 18505-9813

18         david.lankford@libertymutual.com

19         (248) 223-0120

20

21

22

23

24

25

Page 3

1                        I N D E X

2   EXAMINATION:                                PAGE

3        By Mr. Lankford                        5

4        By Mr. Ekleberry                       25

5        By Mr. Lankford                        27

6

7                     E X H I B I T S

8   NO.              DESCRIPTION                 PAGE

9                  (None marked.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 4

1                    P R O C E E D I N G S

2                    THE REPORTER:  Good afternoon.  My name

3     is Priscilla Gibbs; I am the reporter assigned by

4     Veritext to take the record of this proceeding.  We

5     are now on the record at 2:01.

6                    This is the deposition of Julie Strief

7     taken in the matter of Lint Chiropractic, Diagnostic

8     Chiropractic Michigan PC, and Supplies Plus Michigan

9     LLC vs. Liberty Surplus Insurance Corporation,

10    a foreign insurance corporation, on Wednesday, October

11    11, 2023, via Zoom.

12                    I am a notary authorized to take

13    acknowledgments and administer oaths in Michigan.

14    Parties agree that I will swear in the witness

15    remotely.

16                    Additionally, absent an objection on

17    the record before the witness is sworn, all parties

18    and the witness understand and agree that any

19    certified transcript produced from the recording of

20    this proceeding:

21                         - is intended for all uses permitted

22                         under applicable procedural and

23                         evidentiary rules and laws in the same

24                         manner as a deposition recorded by

25                         stenographic means; and

```
                                                      Page 5

 1                      - shall constitute written stipulation

 2                      of such.

 3                      At this time will everyone in

 4        attendance please identify yourself for the record,

 5        starting with the taking attorney.

 6                      MR. LANKFORD:  David Lankford on behalf

 7        of Steven Braun for Defendant.

 8                      MR. EKLEBERRY:  James Ekleberry

 9        appearing on behalf of Plaintiffs.

10                      THE REPORTER:  Thank you.

11                      Hearing no objection, I will now swear

12        in the witness.

13                      Please raise your right hand.  I'm

14        sorry, I can't see if you're raising your right hand.

15        WHEREUPON,

16                            JULIE STRIEF,

17        called as a witness, and having been first duly sworn

18        to tell the truth, the whole truth, and nothing but

19        the truth, was examined and testified as follows:

20                      THE REPORTER:  Thank you.

21                            EXAMINATION

22        BY MR. LANKFORD:

23           Q    Hi Doctor.  Your full name is Julie Ann,

24        A-N-N, Strief, S-T-R-I-E-F; correct?

25           A    Correct.
```

Page 6

1      Q    You're a licensed chiropractor in the state

2   of Michigan; true?

3      A    True.

4      Q    And you've been licensed since about 1997,

5   according to the state website; correct?

6      A    Correct.

7      Q    Have you ever had any actions taken against

8   your license?

9      A    No.

10      Q    Where do you currently work?

11      A    Lint Chiropractic.

12      Q    How long have you been there?

13      A    About a year and a half.

14      Q    Where did you work prior to Lint

15   Chiropractic?

16      A    I was self-employed.

17      Q    So you had your own practice?

18      A    No.  I covered for doctors that went on

19   vacation, so I traveled all over the state of Michigan

20   in a number of different offices.

21      Q    Did you have your own company to do that or

22   were you working with a case finding company?

23      A    People contacted me because I had an ad in

24   the Michigan Chiropractice Association Journal.

25      Q    Just to do coverage work, is that it?

Page 7

```
 1      A    Correct.

 2      Q    And so you were paid as essentially a 1099

 3 person when you were doing that coverage work?

 4      A    Correct.

 5      Q    Since you've been over at Lint, what is your

 6 position there; are you an employee there or a

 7 contractor or what?

 8      A    At first I was a contractor and now I'm an

 9 employee.

10      Q    About how long were you a contractor for

11 Lint?

12      A    Probably about a year.

13      Q    And you said now you're an employee; are you

14 a full-time employee or something else?

15      A    Full time.

16      Q    And how many hours a week or how many

17 patients per week is full time for you at Lint?

18                MR. EKLEBERRY:  Compound question, but

19 you can answer.

20                THE WITNESS:  It's five days a week.

21 BY MR. LANKFORD:

22      Q    So full time is defined by a number of hours

23 or number of days?

24      A    Yes.

25      Q    Do you have any parameters on how many
```

Page 8

1    patients you need to see during your five-day-a-week?

2        A    No.

3                   MR. EKLEBERRY:  Foundation.

4    BY MR. LANKFORD:

5        Q    Do you have anything to do with referrals

6    coming in to Lint in terms of you're out looking for

7    patients?

8        A    No, I don't.

9        Q    How are cases assigned to you?

10       A    Patients walk in the door and I see them.

11       Q    Are you always the intake for your own

12   patients or do you see other doctors' patients as

13   well?

14                  MR. EKLEBERRY:  Objection.  Form.

15                  Go ahead.

16                  THE WITNESS:  Both.  We have two

17   doctors here, and if I'm not here the other doctor

18   will see them.

19   BY MR. LANKFORD:

20       Q    Do you have your own patient caseload or is

21   it the available doctor for whoever's there on a

22   particular day?

23       A    It's for whoever's available.

24       Q    Do you have a particular supervisor?

25       A    Yes.

```
                                              Page 9
 1        Q    Who's that, please?
 2        A    Rob Super.
 3        Q    And for what sorts of things do you have to
 4   answer to Dr. Super?
 5        A    If I've got questions or he's got questions
 6   about something, I'll ask him or he'll ask me.
 7        Q    Does he have to review any of your work, do
 8   you know?
 9        A    Sometimes he does.
10        Q    Is that part of his supervisory role or
11   another role he has at Lint, if you know?
12        A    I don't know for sure.
13        Q    Other than examination and manual therapy,
14   do you do any other services at Lint?
15        A    No.
16        Q    Are you working anywhere other than Lint
17   right now?
18        A    No, I'm not.
19        Q    When did you first come to see Monique
20   Beckham at Lint Chiropractic?
21        A    I believe it was October 19, 2022.
22        Q    What was your task on that date regarding
23   Ms. Beckham?
24        A    To do an exam on her.
25        Q    Had she already been a patient at Lint, if
```

Page 10

1    you know?

2         A    I don't believe so.

3         Q    So this was the intake visit as far as you

4    know?

5         A    Yes.

6         Q    About how long did that initial visit take

7    on October 19, 2022?

8         A    Probably about a half hour.

9         Q    What's comprised of your initial examination

10   on someone like Ms. Beckham?

11        A    I ask them questions, find out where they're

12   having pain, have them describe it, perform range of

13   motion orthopedic exam, palpation.  If they need to

14   have muscle testing, I'll do muscle testing.  Check

15   their reflexes if I feel it's necessary.  A typical

16   chiropractic exam.

17        Q    If you recall or if there's a document there

18   to remind you, did you do all of those things on

19   Ms. Beckham on October 19, 2022?

20        A    I did orthopedic tests.  Range of motion.  I

21   did not do muscle testing or reflexes.

22        Q    What about palpation?

23        A    Yes.

24        Q    Anything else in that initial exam other

25   than range of motion, orthopedic exam and palpation?

Page 11

1      A    No, I do not believe.

2      Q    Did you do any manual adjustments for

3   Ms. Beckham on that first visit?

4      A    It does not look like it.

5      Q    Does the record indicate the referral source

6   of Ms. Beckham over to Lint from any person or any

7   facility?

8      A    Can you repeat that?

9      Q    Sure.  You said that you thought this was

10  the initial visit for Ms. Beckham.  Does your record

11  indicate a referral source or how Ms. Beckham got to

12  Lint Chiropractic?

13     A    No, it does not.

14     Q    Are you familiar with the name of Shelby

15  Glazier?

16     A    No.

17     Q    I'm looking at a document, looks like it's

18  dated October 19, 2022, for Ms. Beckham, and it says

19  "Referring physician," it has your name, and it is a

20  referral for trigger point impedance --

21  I-M-P-E-D-A-N-C-E -- imaging and localized intense

22  neurostimulation therapy if necessary.  And then your,

23  looks like your signature at the bottom.

24          Do you have that document in front of you?

25     A    Yes, I do.

Page 12

1          Q    And it looks like there are four options on

2     the preprinted form, for thoracic spine pain, thoracic

3     myofascitis, lumbar spine pain and lumbosacral

4     myofascitis; correct?

5          A    Correct.

6          Q    And you made that referral for those two

7     therapies on that date; true?

8          A    True.

9          Q    When you did your examination of

10    Ms. Beckham, did you find any other areas of her body

11    were either complained of or that you diagnosed as a

12    focus for treatment other than thoracic lumbar or

13    lumbosacral?

14         A    Neck pain.

15         Q    Why was there no referral option for trigger

16    point impedance imaging or localized intense

17    neurostimulation therapy for cervical for Ms. Beckham?

18         A    Because that machine does not do -- does not

19    treat the cervical.

20         Q    What does that machine do?

21         A    It treats trigger points.

22         Q    How does it treat it?

23         A    It detects it.  And then the pins or needles

24    will go into the muscle to put stimulation into the

25    muscle to break up the trigger point.

Page 13

1       Q    So when you say a needle goes into the

2    muscle, it's an invasive tool; correct?

3       A    It is not a needle.  It's a pin that's

4    attached to the machine.

5       Q    Does it break the skin?

6       A    No, it does not.  It puts pressure on the

7    muscle.

8       Q    When you do your range of motion, orthopedic

9    and palpation exam, do you already identify trigger

10   points?

11      A    Some trigger points I could pick up, but not

12   all trigger points.

13      Q    Did you use any devices when you were doing

14   your hands-on examination of Ms. Beckham, an activator

15   or any other tool?

16      A    No, I did not.

17      Q    So you're picking up trigger points and any

18   anomalies by touch; correct?

19      A    Correct.

20      Q    Did you order any x-rays for Ms. Beckham?

21      A    No, I did not.

22      Q    Other than the two diagnostic tests we

23   started talking about, did you order any other

24   diagnostic testing for Ms. Beckham?

25      A    Not on October 19th.

Page 14

1       Q     Did you at any other time?

2       A     At the end of her treatment I recommended an

3   MRI.

4       Q     What date do you have as the end of her

5   treatment?

6       A     Her last day that she came in to see us, I

7   believe, is 4/3 of '23.

8       Q     Why did you order an MRI on that date?

9       A     Because she still had pain.

10      Q     What was your purpose in ordering an MRI.

11                  MR. EKLEBERRY:  Asked and answered.

12                  Go ahead.

13                  THE WITNESS:  To rule out any disc

14  herniations.

15  BY MR. LANKFORD:

16      Q     Are disc herniations within your scope of

17  practice as a chiropractor?

18      A     Yes.

19      Q     So your scope of practice is beyond treating

20  subluxations, is that your testimony?

21                  MR. EKLEBERRY:  Mischaracterizes the

22  record.

23                  You can answer, Doctor.

24                  THE WITNESS:  Yes.

25  //

Page 15

1    BY MR. LANKFORD:

2        Q    Beyond subluxations, what else is included

3    in your scope of practice by your testimony?

4                    MR. EKLEBERRY:  Objection to form and

5    foundation.

6                    Doctor, go ahead.

7                    THE WITNESS:  Can you repeat the

8    question?

9                    MR. LANKFORD:  Sure.

10                    Ms. Gibbs, can you read it back,

11    please.

12                    (The reporter played the record as

13                    requested.)

14                    THE REPORTER:  You may continue.

15                    THE WITNESS:  We can treat disc

16    herniations, subluxations, muscle tightness, trigger

17    points, extremities.  A number of things.

18    BY MR. LANKFORD:

19        Q    When you say a number of things, what else?

20                    MR. EKLEBERRY:  Same objection, but go

21    ahead, Doctor.

22                    THE WITNESS:  I think I've covered all

23    of them that I treat.

24    BY MR. LANKFORD:

25        Q    Who operates the trigger point impedance

Page 16

```
 1   imaging and localized intense neurostimulation therapy

 2   machine for Ms. Beckham?

 3       A    I'm not sure at that time who was working.

 4       Q    Did you ever operate the machine for

 5   Ms. Beckham for any of the times that you saw her

 6   based upon this October 19, 2022 referral?

 7       A    No, I did not.

 8       Q    Are you trained to operate the machine?

 9       A    No, I'm not.

10       Q    Who at Lint would have been the possible

11   individuals who would have operated this machine for

12   Ms. Beckham, if you know?

13       A    I'm not sure.

14       Q    What was your purpose for making the

15   referral for this machine if you don't know how it

16   operates?

17                MR. EKLEBERRY:  Lack of foundation.

18   Mischaracterizes the record.

19                Go ahead, Doctor.

20                THE WITNESS:  I know how it works.

21   BY MR. LANKFORD:

22       Q    What was your purpose for making the

23   referral?

24       A    The purpose?  So that we could treat

25   Ms. Beckham's muscles and her spine to help with the
```

Page 17

```
 1   subluxations and the pain she was in.
 2       Q    What subluxations did you identify for
 3   Ms. Beckham on October 19, 2022?
 4       A    C5/6, C6/7, T5/6, T6/7, and L4/5 and L5/S1.
 5       Q    And how did you make those diagnoses?
 6       A    By palpation.
 7       Q    Did anybody share the results of this
 8   machine use with Ms. Beckham after it was utilized
 9   with her?
10       A    No.
11       Q    Do you know anything about the coding or
12   billing for the services you rendered for Ms. Beckham?
13       A    I have no clue.
14       Q    So if I told you about CPT codes, would you
15   know what they mean or not really?
16       A    Not really.
17       Q    How do you record the services you provided
18   to Ms. Beckham, either diagnostic or treatment; is
19   there a sheet you fill out, a computer that you use?
20   How do you record what you do?
21       A    On paperwork.
22       Q    What kind of paperwork do you have to
23   complete for patients such as Ms. Beckham when you see
24   them?
25       A    A SOAP note.
```

Page 18

```
 1      Q    Is that something you write or do you
 2  dictate it?
 3      A    I write it.
 4      Q    And by "write," these days, I think
 5  everybody understands you would be keying it in and
 6  not hand writing it?
 7      A    No, I hand write it.
 8      Q    So there are handwritten notes?
 9      A    Yeah, that I check stuff off of.
10      Q    Okay.  Is that a preprinted form that you
11  check stuff off of or are you handwriting a narrative,
12  or both?
13      A    It's a pre-written form that I check stuff
14  off of.
15      Q    Do you know where that form is from?
16      A    I have no idea.
17      Q    Was that form in place when you started at
18  Lint about a year and a half ago?
19      A    Yes.
20      Q    Is there a space to add something if it's
21  not on the preprinted form?
22      A    Yes.
23      Q    And then do you know how that form is turned
24  into a bill, or don't you know?
25      A    I have no clue.
```

Page 19

1      Q    So you write out your information on this

2   form; where does the form then go, if you know?

3      A    I hand it to the front desk and I don't know

4   where it goes after that.

5      Q    Fair to say you don't --

6      A    I'm assuming in their files.

7      Q    Fair to say that you have no idea how

8   charges are set for each code for the services that

9   you rendered to Ms. Beckham?

10     A    No, I don't.

11     Q    I have a date, I don't know what happened on

12  the date of October 28, 2022, where you're listed as

13  seeing Ms. Beckham; do you have a note or some

14  reference to that date?

15     A    October what was that?

16     Q    I have 28, 2022.

17     A    I have one for the Nervomatrix, but no note

18  for myself.

19     Q    Okay.  How about for November 4, 2022?

20     A    Yes.

21     Q    What did you do with Ms. Beckham on November

22  4, 2022?

23     A    I adjusted C5/6, 6/7, T5/6, T6/7, L3/4.  And

24  I did some manual treatment.

25     Q    I'm sorry, I missed the last thing you said.

Page 20

1      A    I adjusted and did some manual therapy.

2      Q    Got it.

3           Any Nervomatrix on that day, November 4,

4      2022?

5      A    I didn't do that.

6      Q    The next date --

7      A    But --

8      Q    Sure, I'm sorry, go ahead.

9      A    She did receive Nervomatrix on that day.

10     Q    Any contraindication for manual adjustment

11     and Nervomatrix on the same date that you are aware

12     of?

13     A    Nope.

14     Q    The next date I have is November 11, 2022;

15     what did you do with Ms. Beckham on that date?

16     A    I adjusted C4/5, C5/6, T4/5, T5/6, and I did

17     some manual therapy.

18     Q    What other dates did you see Ms. Beckham?

19     Those are the only four that I found.  I think you

20     gave us April 3, 2023.

21     A    Yes.

22     Q    Anything between November 11 and May 3,

23     2023, that you find?

24     A    No.  I have -- no.

25     Q    So it looks like those are the five dates;

```
                                              Page 21

 1   correct?

 2        A    Yes.

 3        Q    You gave me a brief description on how the

 4   Nervomatrix system works.  You said it was pins that

 5   applied pressure to trigger points; correct?

 6        A    Correct.

 7        Q    How else does that machine work, if you

 8   know?

 9             MR. EKLEBERRY:  Objection to form, but

10   you can answer.

11             THE WITNESS:  Just that it treats

12   trigger points.

13   BY MR. LANKFORD:

14        Q    Through the pressure pin method you told us

15   about; correct?

16        A    Yes.

17        Q    Does it affect your treatment, your manual

18   treatment with Ms. Beckham at all, what happens with

19   that machine?

20        A    Well, the Nervomatrix will get the muscles

21   to relax to hold the adjustment and make it easier to

22   adjust a patient.

23        Q    So is that done before or after your manual

24   therapy?

25        A    The Nervomatrix is done before the manual
```

Page 22

1    therapy -- or the adjustments and manual therapy, yes.

2        Q    You said on October 28, 2022, it was

3    Nervomatrix only, so you didn't do any manual

4    adjustment on that date?

5        A    On what date?

6        Q    October 28, 2022.  Because I thought you

7    said Nervomatrix only.  I wanted to verify that.

8        A    Yes, that's correct.

9        Q    Was any Nervomatrix done on October 19,

10   2022, your initial visit with Ms. Beckham, or that's

11   just the time you made the referral?

12       A    Yes, there was Nervomatrix done on that day.

13       Q    Does the involvement of the Nervomatrix

14   change your treatment planning or diagnostic

15   impressions for Ms. Beckham at all?

16       A    No.

17       Q    In the absence of the Nervomatrix, is there

18   another method to allow your adjustment, as you said,

19   to hold better, that would be used before treatment?

20               MR. EKLEBERRY:  Form and foundation.

21               Doctor, you can answer.

22               THE WITNESS:  Not anything that would

23   be as effective.

24   BY MR. LANKFORD:

25       Q    My question was, was there any -- is there

Page 23

```
 1   any other option.
 2        A    And I said no, nothing that would be as
 3   effective as the Nervomatrix.
 4        Q    What are the other options that would be
 5   less effective?
 6        A    Manual treatment of the trigger points.
 7        Q    Heat, or no?
 8        A    I usually don't use heat.  Because heat
 9   brings more swelling and inflammation to an area.
10        Q    How about cold?
11        A    If someone is acute and I've finished
12   treating them, I will use cold on them.
13        Q    But that would be after your treatment;
14   correct?
15        A    Correct.
16        Q    So the treatment for Ms. Beckham from you
17   not involving the Nervomatrix would be cervical only;
18   is that fair?
19             MR. EKLEBERRY:  Mischaracterizes the
20   record.
21             Go ahead, Doctor, you can address the
22   question.
23             THE WITNESS:  No, I would be treating
24   the thoracic and lumbar as well.
25   //
```

Page 24

1    BY MR. LANKFORD:

2        Q    My question was, treatment areas not

3    involving the Nervomatrix from you would be cervical

4    only; correct?

5        A    Oh, correct.

6                MR. EKLEBERRY:  Mischaracterizes the

7    record.

8    BY MR. LANKFORD:

9        Q    Did you treat any areas of Ms. Beckham's

10   body other than her spinal column from cervical

11   through lumbosacral?

12       A    No, I don't believe I did.

13       Q    When you said that you referred her for an

14   MRI as of April 3, 2023, was that the last time she

15   came in or was she discharged, if you know?

16       A    That was the last time she came in.

17       Q    Do you know what her treatment status was as

18   of April 3, 2023, or can you tell from the record?

19       A    I don't know.

20       Q    Was she seen after that day, or that was the

21   last date you saw her?

22       A    That was the last date she came in.

23       Q    Did you refer her to someplace specific for

24   an MRI or just get an MRI?

25       A    I referred her to Northland Radiology.

```
                                              Page 25

 1        Q     Why specifically Northland Radiology?

 2        A     Because that was right down the street from

 3   us.

 4        Q     What areas of her body did you refer her to

 5   get MRIs upon?

 6        A     Her thoracic area.

 7        Q     Thoracic only?

 8        A     Yes.

 9        Q     Did you give her a choice to go anywhere

10   else or you just sent her over to Northland?

11        A     I just sent her over to Northland.

12        Q     Do you have any information in your file

13   whether she went?

14        A     No, I do not.

15              MR. LANKFORD:  I don't have any other

16   questions for you.  Thank you, Doctor.

17              MR. EKLEBERRY:  Doctor, I've got a

18   couple of follow up questions for you.

19                         EXAMINATION

20   BY MR. EKLEBERRY:

21        Q     First, you've described a number of

22   interactions that you've had, or had with Ms. Beckham

23   over the course of your treatment.  When you interact

24   with a patient, do you record those interactions in

25   the form of a medical record?
```

Page 26

1      A     In a SOAP note, yes.

2      Q     Does that SOAP note get converted to an

3   electronic medical record that becomes part of Lint's

4   patient chart?

5      A     I'm not sure how they -- you know, I just

6   have the paper file.

7      Q     Okay.  Does Lint, or do you as an employee

8   of Lint, maintain patient records documenting your

9   interactions with each patient?

10     A     In regard to our conversations or how I

11  treated them?

12     Q     Interactions and treatment.

13     A     Just a SOAP note.

14     Q     When you make conclusions about a patient's

15  injury or the origin of said injury, do you make those

16  conclusions to a reasonable degree of chiropractic

17  certainty?

18     A     Yes.

19     Q     And did you make any conclusions about the

20  origin of Ms. Beckham's injuries?

21     A     Yeah, they started in her spine from the

22  auto accident.

23     Q     When you say the auto accident, are you

24  referring to the March 19, 2022, auto accident?

25     A     Yes.

Page 27

1       Q    And is it your opinion that the treatment

2   you provided to Ms. Beckham was both reasonable and

3   necessary?

4       A    Yes.

5              MR. EKLEBERRY:  Thank you, Doctor,

6   those are all the questions I have for you at this

7   time.

8              MR. LANKFORD:  Couple of follow-ups for

9   you, Dr. Strief.

10                  EXAMINATION

11  BY MR. LANKFORD:

12      Q    At the time you saw Ms. Beckham for the

13  first time on October 19, 2022, what other

14  documentation or evidence did you have before you to

15  supplemental what she told you about her injury or the

16  origin of it?

17              MR. EKLEBERRY:  Form and foundation.

18              Go ahead, Doctor.

19              THE WITNESS:  I mean, my exam findings.

20  BY MR. LANKFORD:

21      Q    Did you have any other documentation

22  regarding Ms. Beckham at all the first time you saw

23  her?

24      A    No.

25      Q    Did you rely solely upon her statements to

Page 28

1   you about her symptoms and the possible causation of

2   them?

3        A    Yes.

4              MR. EKLEBERRY:  Form and foundation.

5   BY MR. LANKFORD:

6        Q    Now, following the time that you saw

7   Ms. Beckham on October 19, 2022, did you ever request

8   or receive any other records of any sort to verify the

9   reports that Ms. Beckham gave to you?

10       A    No, I did not.

11             MR. LANKFORD:  Nothing further for me

12  right now.

13             MR. EKLEBERRY:  No further questions at

14  this time.

15             MR. LANKFORD:  I think we're all set.

16             Miss Court Reporter, do you need

17  spellings of any sort?

18             THE REPORTER:  Yes, I do.

19             First, do we have any orders for this

20  witness?

21             MR. LANKFORD:  Yes, could you send an

22  electronic copy to Mr. Braun, please.

23             THE REPORTER:  All right.

24             How about you, Counsel?

25             MR. EKLEBERRY:  I'll also take an

Page 29

1    e-trans, please, and thank you.

2                    THE REPORTER:  All right.  The time is

3    2:40, we're now off the record.

4                    (Whereupon, at 2:40 p.m., the

5                    proceeding was concluded.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 30

```
 1              CERTIFICATE OF DEPOSITION OFFICER

 2              I, PRISCILLA GIBBS, the officer before whom

 3     the foregoing proceedings were taken, do hereby

 4     certify that any witness(es) in the foregoing

 5     proceedings, prior to testifying, were duly sworn;

 6     that the proceedings were recorded by me and

 7     thereafter reduced to typewriting by a qualified

 8     transcriptionist; that said digital audio recording of

 9     said proceedings are a true and accurate record to the

10     best of my knowledge, skills, and ability; that I am

11     neither counsel for, related to, nor employed by any

12     of the parties to the action in which this was taken;

13     and, further, that I am not a relative or employee of

14     any counsel or attorney employed by the parties

15     hereto, nor financially or otherwise interested in the

16     outcome of this action


17                                    PRISCILLA GIBBS

18                             Notary Public in and for the

19                                    State of Michigan

20

21

22

23

24

25
```

Page 31

1             CERTIFICATE OF TRANSCRIBER

2         I, CHERYL MCKINNEY, do hereby certify that

3  this transcript was prepared from the digital audio

4  recording of the foregoing proceeding, that said

5  transcript is a true and accurate record of the

6  proceedings to the best of my knowledge, skills, and

7  ability; that I am neither counsel for, related to,

8  nor employed by any of the parties to the action in

9  which this was taken; and, further, that I am not a

10  relative or employee of any counsel or attorney

11  employed by the parties hereto, nor financially or

12  otherwise interested in the outcome of this action.

13

14

15            CHERYL MCKINNEY

16

17

18

19

20

21

22

23

24

25

| | | | |
|---|---|---|---|
| **&** | **25899** 2:6 | **action** 30:12,16 | **answered** |
| | **27** 3:5 | 31:8,12 | 14:11 |
| **&** 2:5 | **28** 19:12,16 | **actions** 6:7 | **anybody** 17:7 |
| **1** | 22:2,6 | **activator** 13:14 | **appearing** 5:9 |
| | **28731** 30:16 | **acute** 23:11 | **applicable** 4:22 |
| **1099** 7:2 | **29670** 31:14 | **ad** 6:23 | **applied** 21:5 |
| **11** 1:16 4:11 | **2:01** 1:17 4:5 | **add** 18:20 | **april** 20:20 |
| 20:14,22 | **2:40** 29:3,4 | **additionally** | 24:14,18 |
| **12** 2:6 | **3** | 4:16 | **area** 23:9 25:6 |
| **18505-9813** | | **address** 23:21 | **areas** 12:10 |
| 2:17 | **3** 20:20,22 | **adjust** 21:22 | 24:2,9 25:4 |
| **19** 9:21 10:7,19 | 24:14,18 | **adjusted** 19:23 | **asked** 14:11 |
| 11:18 16:6 | **356-3300** 2:9 | 20:1,16 | **assigned** 4:3 |
| 17:3 22:9 | **4** | **adjustment** | 8:9 |
| 26:24 27:13 | | 20:10 21:21 | **association** |
| 28:7 | **4** 19:19,22 20:3 | 22:4,18 | 6:24 |
| **1997** 6:4 | **4/3** 14:7 | **adjustments** | **assuming** 19:6 |
| **19th** 13:25 | **48034** 2:7 | 11:2 22:1 | **attached** 13:4 |
| **2** | **48075** 1:19 | **administer** | **attendance** 5:4 |
| | **5** | 4:13 | **attorney** 5:5 |
| **200** 2:6 | | **affect** 21:17 | 30:14 31:10 |
| **2022** 9:21 10:7 | **5** 3:3 | **afternoon** 4:2 | **audio** 30:8 31:3 |
| 10:19 11:18 | **6** | **ago** 18:18 | **authorized** |
| 16:6 17:3 | | **agree** 4:14,18 | 4:12 |
| 19:12,16,19,22 | **6/7** 19:23 | **ahead** 8:15 | **auto** 26:22,23 |
| 20:4,14 22:2,6 | **6835** 2:16 | 14:12 15:6,21 | 26:24 |
| 22:10 26:24 | **a** | 16:19 20:8 | **available** 8:21 |
| 27:13 28:7 | | 23:21 27:18 | 8:23 |
| **2023** 1:16 4:11 | **ability** 30:10 | **allow** 22:18 | **aware** 20:11 |
| 20:20,23 24:14 | 31:7 | **ann** 5:23 | **b** |
| 24:18 | **absence** 22:17 | **anomalies** | |
| **22-014214** 1:9 | **absent** 4:16 | 13:18 | **b** 3:7 |
| **223-0120** 2:19 | **accident** 26:22 | **answer** 7:19 | **back** 15:10 |
| **23** 14:7 | 26:23,24 | 9:4 14:23 | **based** 16:6 |
| **248** 2:9,19 | **accurate** 30:9 | 21:10 22:21 | **beckham** 9:20 |
| **25** 3:4 | 31:5 | | 9:23 10:10,19 |
| | **acknowledg...** | | |
| | 4:13 | | |

| | **c** | choice  25:9 | **corporation** |
|---|---|---|---|
| 11:3,6,10,11,18 | **c**  2:1 4:1 11:21 | circuit  1:2 | 1:10,11 4:9,10 |
| 12:10,17 13:14 | **c4/5**  20:16 | clue  17:13 | **correct**  5:24,25 |
| 13:20,24 16:2 | **c5/6**  17:4 19:23 | 18:25 | 6:5,6 7:1,4 |
| 16:5,12 17:3,8 | 20:16 | code  19:8 | 12:4,5 13:2,18 |
| 17:12,18,23 | **c6/7**  17:4 | codes  17:14 | 13:19 21:1,5,6 |
| 19:9,13,21 | **called**  5:17 | coding  17:11 | 21:15 22:8 |
| 20:15,18 21:18 | **case**  1:8 6:22 | cold  23:10,12 | 23:14,15 24:4 |
| 22:10,15 23:16 | **caseload**  8:20 | column  24:10 | 24:5 |
| 25:22 27:2,12 | **cases**  8:9 | come  9:19 | **counsel**  28:24 |
| 27:22 28:7,9 | **causation**  28:1 | coming  8:6 | 30:11,14 31:7 |
| **beckham's** | **certainty**  26:17 | company  2:12 | 31:10 |
| 16:25 24:9 | **certificate**  30:1 | 6:21,22 | **county**  1:2 |
| 26:20 | 31:1 | complained | **couple**  25:18 |
| **behalf**  2:2,11 | **certified**  4:19 | 12:11 | 27:8 |
| 5:6,9 | **certify**  30:4 | complete  17:23 | **course**  25:23 |
| **believe**  9:21 | 31:2 | compound  7:18 | **court**  1:2 28:16 |
| 10:2 11:1 14:7 | **cervical**  12:17 | comprised  10:9 | **coverage**  6:25 |
| 24:12 | 12:19 23:17 | computer | 7:3 |
| **best**  30:10 31:6 | 24:3,10 | 17:19 | **covered**  6:18 |
| **better**  22:19 | **change**  22:14 | concluded  29:5 | 15:22 |
| **beyond**  14:19 | **charges**  19:8 | conclusions | **cpt**  17:14 |
| 15:2 | **chart**  26:4 | 26:14,16,19 | **cs6109209**  1:25 |
| **bill**  18:24 | **check**  10:14 | constitute  5:1 | **currently**  6:10 |
| **billing**  17:12 | 18:9,11,13 | contacted  6:23 | **d** |
| **body**  12:10 | **cheryl**  31:2,15 | continue  15:14 | **d**  3:1 4:1 11:21 |
| 24:10 25:4 | **chiropractic** | contractor  7:7 | **date**  1:16 9:22 |
| **bottom**  11:23 | 1:4,5 2:2,3 4:7 | 7:8,10 | 12:7 14:4,8 |
| **box**  2:16 | 4:8 6:11,15 | contraindicat... | 19:11,12,14 |
| **braun**  5:7 | 9:20 10:16 | 20:10 | 20:6,11,14,15 |
| 28:22 | 11:12 26:16 | conversations | 22:4,5 24:21 |
| **break**  12:25 | **chiropractice** | 26:10 | 24:22 |
| 13:5 | 6:24 | converted  26:2 | **dated**  11:18 |
| **brief**  21:3 | **chiropractor** | copy  28:22 | **dates**  20:18,25 |
| **brings**  23:9 | 6:1 14:17 | | |

**[david - form]**                                                        Page 3

**david** 2:13 5:6
**david.lankford**
  2:18
**day** 8:1,22 14:6
  20:3,9 22:12
  24:20
**days** 7:20,23
  18:4
**defendant** 1:12
  2:11 5:7
**defined** 7:22
**degree** 26:16
**deposition** 1:14
  4:6,24 30:1
**describe** 10:12
**described**
  25:21
**description** 3:8
  21:3
**desk** 19:3
**detects** 12:23
**devices** 13:13
**diagnosed**
  12:11
**diagnoses** 17:5
**diagnostic** 1:4
  2:2 4:7 13:22
  13:24 17:18
  22:14
**dictate** 18:2
**different** 6:20
**digital** 30:8
  31:3
**disc** 14:13,16
  15:15

**discharged**
  24:15
**doctor** 5:23
  8:17,21 14:23
  15:6,21 16:19
  22:21 23:21
  25:16,17 27:5
  27:18
**doctors** 6:18
  8:12,17
**document**
  10:17 11:17,24
**documentation**
  27:14,21
**documenting**
  26:8
**doing** 7:3 13:13
**door** 8:10
**dr** 9:4 27:9
**duly** 5:17 30:5

**e**

**e** 2:1,1 3:1,7 4:1
  4:1 5:24 11:21
  11:21 29:1
**easier** 21:21
**effective** 22:23
  23:3,5
**either** 12:11
  17:18
**ekleberry** 2:4
  3:4 5:8,8 7:18
  8:3,14 14:11
  14:21 15:4,20
  16:17 21:9
  22:20 23:19

24:6 25:17,20
  27:5,17 28:4
  28:13,25
**electronic** 26:3
  28:22
**employed** 6:16
  30:11,14 31:8
  31:11
**employee** 7:6,9
  7:13,14 26:7
  30:13 31:10
**es** 30:4
**esquire** 2:4,13
**essentially** 7:2
**everybody** 18:5
**evidence** 27:14
**evidentiary**
  4:23
**exam** 9:24
  10:13,16,24,25
  13:9 27:19
**examination**
  3:2 5:21 9:13
  10:9 12:9
  13:14 25:19
  27:10
**examined** 5:19
**extremities**
  15:17

**f**

**f** 5:24
**facility** 11:7
**fair** 19:5,7
  23:18

**falzon** 2:5
**falzonlaw.com**
  2:8
**familiar** 11:14
**far** 10:3
**feel** 10:15
**file** 25:12 26:6
**files** 19:6
**fill** 17:19
**financially**
  30:15 31:11
**find** 10:11
  12:10 20:23
**finding** 6:22
**findings** 27:19
**finished** 23:11
**first** 5:17 7:8
  9:19 11:3
  25:21 27:13,22
  28:19
**fitzgibbons**
  2:15
**five** 7:20 8:1
  20:25
**focus** 12:12
**follow** 25:18
  27:8
**following** 28:6
**follows** 5:19
**foregoing** 30:3
  30:4 31:4
**foreign** 1:10
  4:10
**form** 8:14 12:2
  15:4 18:10,13

**[form - lankford]**                                                                    Page 4

18:15,17,21,23
19:2,2 21:9
22:20 25:25
27:17 28:4
**found**   20:19
**foundation**   8:3
15:5 16:17
22:20 27:17
28:4
**four**   12:1 20:19
**front**   11:24
19:3
**full**   5:23 7:14
7:15,17,22
**further**   28:11
28:13 30:13
31:9

**g**

**g**   4:1
**gibbs**   1:20 4:3
15:10 30:2,17
**give**   25:9
**glazier**   11:15
**go**   8:15 12:24
14:12 15:6,20
16:19 19:2
20:8 23:21
25:9 27:18
**goes**   13:1 19:4
**good**   4:2
**greig**   2:14

**h**

**h**   3:7

**half**   6:13 10:8
18:18
**hand**   5:13,14
18:6,7 19:3
**hands**   13:14
**handwriting**
18:11
**handwritten**
18:8
**happened**
19:11
**happens**   21:18
**he'll**   9:6
**hearing**   5:11
**heat**   23:7,8,8
**help**   16:25
**hereto**   30:15
31:11
**herniations**
14:14,16 15:16
**hi**   5:23
**hold**   21:21
22:19
**hour**   10:8
**hours**   7:16,22

**i**

**idea**   18:16 19:7
**identify**   5:4
13:9 17:2
**imaging**   11:21
12:16 16:1
**impedance**
11:20 12:16
15:25

**impressions**
22:15
**included**   15:2
**indicate**   11:5
11:11
**individuals**
16:11
**inflammation**
23:9
**information**
19:1 25:12
**initial**   10:6,9,24
11:10 22:10
**injuries**   26:20
**injury**   26:15,15
27:15
**insurance**   1:9
1:10 2:11 4:9
4:10
**intake**   8:11
10:3
**intended**   4:21
**intense**   11:21
12:16 16:1
**interact**   25:23
**interactions**
25:22,24 26:9
26:12
**interested**
30:15 31:12
**invasive**   13:2
**involvement**
22:13
**involving**   23:17
24:3

**j**

**j**   2:13
**james**   2:4,8 5:8
**job**   1:25
**journal**   6:24
**julie**   1:15 4:6
5:16,23

**k**

**kennedy**   2:14
**keying**   18:5
**kind**   17:22
**know**   9:8,11,12
10:1,4 16:12
16:15,20 17:11
17:15 18:15,23
18:24 19:2,3
19:11 21:8
24:15,17,19
26:5
**knowledge**
30:10 31:6

**l**

**l3/4**   19:23
**l4/5**   17:4
**l5**   17:4
**lack**   16:17
**lankford**   2:13
3:3,5 5:6,6,22
7:21 8:4,19
14:15 15:1,9
15:18,24 16:21
21:13 22:24
24:1,8 25:15
27:8,11,20

[lankford - objection]                                              Page 5

28:5,11,15,21
**law**  2:14
**laws**  4:23
**liberty**  1:9 2:11
  4:9
**libertymutual...**
  2:18
**license**  6:8
**licensed**  6:1,4
**lint**  1:4 2:2 4:7
  6:11,14 7:5,11
  7:17 8:6 9:11
  9:14,16,20,25
  11:6,12 16:10
  18:18 26:7,8
**lint's**  26:3
**listed**  19:12
**llc**  1:6 2:3 4:9
**localized**  11:21
  12:16 16:1
**location**  1:18
**long**  6:12 7:10
  10:6
**look**  11:4
**looking**  8:6
  11:17
**looks**  11:17,23
  12:1 20:25
**lumbar**  12:3,12
  23:24
**lumbosacral**
  12:3,13 24:11

**m**

**m**  11:21
**machine**  12:18
  12:20 13:4
  16:2,4,8,11,15
  17:8 21:7,19
**made**  12:6
  22:11
**maintain**  26:8
**make**  17:5
  21:21 26:14,15
  26:19
**making**  16:14
  16:22
**manner**  4:24
**manual**  9:13
  11:2 19:24
  20:1,10,17
  21:17,23,25
  22:1,3 23:6
**march**  26:24
**marked**  3:9
**matter**  4:7
**mckinney**  31:2
  31:15
**mean**  17:15
  27:19
**means**  4:25
**medical**  25:25
  26:3
**method**  21:14
  22:18
**mi**  1:5,6,19 2:3
  2:3,7

**michigan**  1:1
  4:8,8,13 6:2,19
  6:24 30:19
**mile**  2:6
**mischaracteri...**
  14:21 16:18
  23:19 24:6
**missed**  19:25
**monique**  9:19
**motion**  10:13
  10:20,25 13:8
**mri**  14:3,8,10
  24:14,24,24
**mris**  25:5
**muscle**  10:14
  10:14,21 12:24
  12:25 13:2,7
  15:16
**muscles**  16:25
  21:20
**myofascitis**
  12:3,4

**n**

**n**  2:1 3:1 4:1
  5:24,24 11:21
**name**  4:2 5:23
  11:14,19
**narrative**  18:11
**necessary**
  10:15 11:22
  27:3
**neck**  12:14
**need**  8:1 10:13
  28:16

**needle**  13:1,3
**needles**  12:23
**neither**  30:11
  31:7
**nervomatrix**
  19:17 20:3,9
  20:11 21:4,20
  21:25 22:3,7,9
  22:12,13,17
  23:3,17 24:3
**neurostimula...**
  11:22 12:17
  16:1
**nf**  1:9
**nope**  20:13
**northland**
  24:25 25:1,10
  25:11
**notary**  1:20
  4:12 30:18
**note**  17:25
  19:13,17 26:1
  26:2,13
**notes**  18:8
**november**
  19:19,21 20:3
  20:14,22
**number**  6:20
  7:22,23 15:17
  15:19 25:21

**o**

**o**  4:1
**oaths**  4:13
**objection**  4:16
  5:11 8:14 15:4

**[objection - r]**                                              Page 6

| | | | |
|---|---|---|---|
| 15:20 21:9 | **own**  6:17,21 | **pc**  4:8 | **pressure**  13:6 |
| **october**  1:16 | 8:11,20 | **people**  6:23 | 21:5,14 |
| 4:10 9:21 10:7 | | **perform**  10:12 | **prior**  6:14 30:5 |
| 10:19 11:18 | **p** | **permitted**  4:21 | **priscilla**  1:20 |
| 13:25 16:6 | | **person**  7:3 11:6 | 4:3 30:2,17 |
| 17:3 19:12,15 | **p**  2:1,1 4:1 | **physician** | **probably**  7:12 |
| 22:2,6,9 27:13 | 11:21 | 11:19 | 10:8 |
| 28:7 | **p.c.**  1:5 2:3,5 | **pick**  13:11 | **procedural** |
| **officer**  30:1,2 | **p.m.**  1:17 29:4 | **picking**  13:17 | 4:22 |
| **offices**  2:14 | **p.o.**  2:16 | **pin**  13:3 21:14 | **proceeding** |
| 6:20 | **pa**  2:17 | **pins**  12:23 21:4 | 1:18 4:4,20 |
| **oh**  24:5 | **page**  3:2,8 | **place**  18:17 | 29:5 31:4 |
| **okay**  18:10 | **paid**  7:2 | **plaintiffs**  1:7 | **proceedings** |
| 19:19 26:7 | **pain**  10:12 12:2 | 2:2 5:9 | 30:3,5,6,9 31:6 |
| **operate**  16:4,8 | 12:3,14 14:9 | **planning**  22:14 | **produced**  4:19 |
| **operated**  16:11 | 17:1 | **played**  15:12 | **provided**  17:17 |
| **operates**  15:25 | **palpation** | **please**  5:4,13 | 27:2 |
| 16:16 | 10:13,22,25 | 9:1 15:11 | **public**  1:20 |
| **opinion**  27:1 | 13:9 17:6 | 28:22 29:1 | 30:18 |
| **option**  12:15 | **paper**  26:6 | **plus**  1:6 2:3 4:8 | **purpose**  14:10 |
| 23:1 | **paperwork** | **point**  11:20 | 16:14,22,24 |
| **options**  12:1 | 17:21,22 | 12:16,25 15:25 | **put**  12:24 |
| 23:4 | **parameters** | **points**  12:21 | **puts**  13:6 |
| **order**  13:20,23 | 7:25 | 13:10,11,12,17 | |
| 14:8 | **part**  9:10 26:3 | 15:17 21:5,12 | **q** |
| **ordering**  14:10 | **particular**  8:22 | 23:6 | **qualified**  30:7 |
| **orders**  28:19 | 8:24 | **position**  7:6 | **question**  7:18 |
| **origin**  26:15,20 | **parties**  4:14,17 | **possible**  16:10 | 15:8 22:25 |
| 27:16 | 30:12,14 31:8 | 28:1 | 23:22 24:2 |
| **orthopedic** | 31:11 | **practice**  6:17 | **questions**  9:5,5 |
| 10:13,20,25 | **patient**  8:20 | 14:17,19 15:3 | 10:11 25:16,18 |
| 13:8 | 9:25 21:22 | **pre**  18:13 | 27:6 28:13 |
| **outcome**  30:16 | 25:24 26:4,8,9 | **prepared**  31:3 | |
| 31:12 | **patient's**  26:14 | **preprinted** | **r** |
| | **patients**  7:17 | 12:2 18:10,21 | **r**  2:1 4:1 5:24 |
| | 8:1,7,10,12,12 | | |
| | 17:23 | | |

**[radiology - statements]**                                           Page 7

**radiology**
  24:25 25:1
**raise**  5:13
**raising**  5:14
**range**  10:12,20
  10:25 13:8
**rays**  13:20
**read**  15:10
**really**  17:15,16
**reasonable**
  26:16 27:2
**recall**  10:17
**receive**  20:9
  28:8
**recommended**
  14:2
**record**  4:4,5,17
  5:4 11:5,10
  14:22 15:12
  16:18 17:17,20
  23:20 24:7,18
  25:24,25 26:3
  29:3 30:9 31:5
**recorded**  4:24
  30:6
**recording**  4:19
  30:8 31:4
**records**  26:8
  28:8
**reduced**  30:7
**refer**  24:23
  25:4
**reference**  19:14
**referral**  11:5
  11:11,20 12:6

  12:15 16:6,15
  16:23 22:11
**referrals**  8:5
**referred**  24:13
  24:25
**referring**  11:19
  26:24
**reflexes**  10:15
  10:21
**regard**  26:10
**regarding**  9:22
  27:22
**related**  30:11
  31:7
**relative**  30:13
  31:10
**relax**  21:21
**rely**  27:25
**remind**  10:18
**remote**  1:18
**remotely**  4:15
**rendered**  17:12
  19:9
**repeat**  11:8
  15:7
**reported**  1:20
**reporter**  4:2,3
  5:10,20 15:12
  15:14 28:16,18
  28:23 29:2
**reports**  28:9
**request**  28:7
**requested**
  15:13

**results**  17:7
**review**  9:7
**right**  5:13,14
  9:17 25:2
  28:12,23 29:2
**road**  2:6
**rob**  9:2
**role**  9:10,11
**rule**  14:13
**rules**  4:23

**s**

**s**  2:1 3:7 4:1
  5:24
**s1**  17:4
**saw**  16:5 24:21
  27:12,22 28:6
**says**  11:18
**scope**  14:16,19
  15:3
**scranton**  2:17
**see**  5:14 8:1,10
  8:12,18 9:19
  14:6 17:23
  20:18
**seeing**  19:13
**seen**  24:20
**seifert**  2:14
**self**  6:16
**send**  28:21
**sent**  25:10,11
**services**  9:14
  17:12,17 19:8
**set**  19:8 28:15
**share**  17:7

**sheet**  17:19
**shelby**  11:14
**signature**  11:23
  30:16 31:14
**skills**  30:10
  31:6
**skin**  13:5
**soap**  17:25 26:1
  26:2,13
**solely**  27:25
**someplace**
  24:23
**sorry**  5:14
  19:25 20:8
**sort**  28:8,17
**sorts**  9:3
**source**  11:5,11
**southfield**  1:19
  2:7
**space**  18:20
**specific**  24:23
**specifically**
  25:1
**spellings**  28:17
**spinal**  24:10
**spine**  12:2,3
  16:25 26:21
**started**  13:23
  18:17 26:21
**starting**  5:5
**state**  1:1 6:1,5
  6:19 30:19
**statements**
  27:25

**[status - use]** Page 8

status   24:17
stenographic
    4:25
steven   5:7
stimulation
    12:24
stipulation   5:1
street   25:2
strief   1:15 4:6
    5:16,24 27:9
stuff   18:9,11,13
subluxations
    14:20 15:2,16
    17:1,2
suite   2:6
super   9:2,4
supervisor   8:24
supervisory
    9:10
supplemental
    27:15
supplies   1:6 2:3
    4:8
sure   9:12 11:9
    15:9 16:3,13
    20:8 26:5
surplus   1:9
    2:11 4:9
swear   4:14
    5:11
swelling   23:9
sworn   4:17
    5:17 30:5
symptoms   28:1

system   21:4

**t**

t   3:7 5:24
t4/5   20:16
t5/6   17:4 19:23
    20:16
t6/7   17:4 19:23
take   4:4,12
    10:6 28:25
taken   4:7 6:7
    30:3,12 31:9
talking   13:23
task   9:22
tell   5:18 24:18
terms   8:6
testified   5:19
testifying   30:5
testimony
    14:20 15:3
testing   10:14
    10:14,21 13:24
tests   10:20
    13:22
thank   5:10,20
    25:16 27:5
    29:1
therapies   12:7
therapy   9:13
    11:22 12:17
    16:1 20:1,17
    21:24 22:1,1
thing   19:25
things   9:3
    10:18 15:17,19

think   15:22
    18:4 20:19
    28:15
thoracic   12:2,2
    12:12 23:24
    25:6,7
thought   11:9
    22:6
tightness   15:16
time   1:17 5:3
    7:14,15,17,22
    14:1 16:3
    22:11 24:14,16
    27:7,12,13,22
    28:6,14 29:2
times   16:5
told   17:14
    21:14 27:15
tool   13:2,15
touch   13:18
trained   16:8
trans   29:1
transcriber
    31:1
transcript   4:19
    31:3,5
transcriptionist
    30:8
traveled   6:19
treat   12:19,22
    15:15,23 16:24
    24:9
treated   26:11
treating   14:19
    23:12,23

treatment
    12:12 14:2,5
    17:18 19:24
    21:17,18 22:14
    22:19 23:6,13
    23:16 24:2,17
    25:23 26:12
    27:1
treats   12:21
    21:11
trigger   11:20
    12:15,21,25
    13:9,11,12,17
    15:16,25 21:5
    21:12 23:6
true   6:2,3 12:7
    12:8 30:9 31:5
truth   5:18,18
    5:19
turned   18:23
two   8:16 12:6
    13:22
typewriting
    30:7
typical   10:15

**u**

under   4:22
understand
    4:18
understands
    18:5
ups   27:8
use   13:13 17:8
    17:19 23:8,12

**[used - zoom]**                                                    Page 9

| | |
|---|---|
| **used**  22:19 | 21:11 22:22 |
| **uses**  4:21 | 23:23 27:19 |
| **usually**  23:8 | 28:20 30:4 |
| **utilized**  17:8 | **work**  6:10,14 |
| **v** | 6:25 7:3 9:7 |
| | 21:7 |
| **v**  1:8 | **working**  6:22 |
| **vacation**  6:19 | 9:16 16:3 |
| **verify**  22:7 28:8 | **works**  16:20 |
| **veritext**  4:4 | 21:4 |
| **videoconfere...** | **write**  18:1,3,4,7 |
| 1:14 2:4,13 | 19:1 |
| **visit**  10:3,6 | **writing**  18:6 |
| 11:3,10 22:10 | **written**  5:1 |
| **vs**  4:9 | 18:13 |
| **w** | **x** |
| **w**  2:6 | **x**  3:1,7 13:20 |
| **walk**  8:10 | **y** |
| **wanted**  22:7 | |
| **wayne**  1:2 | **yeah**  18:9 |
| **website**  6:5 | 26:21 |
| **wednesday** | **year**  6:13 7:12 |
| 1:16 4:10 | 18:18 |
| **week**  7:16,17 | **z** |
| 7:20 8:1 | |
| **went**  6:18 | **zoom**  4:11 |
| 25:13 | |
| **whoever's**  8:21 | |
| 8:23 | |
| **wigod**  2:5 | |
| **witness**  4:14,17 | |
| 4:18 5:12,17 | |
| 7:20 8:16 | |
| 14:13,24 15:7 | |
| 15:15,22 16:20 | |

Michigan Court Rules

Chapter 2: Civil Procedure

Subchapter 2.300 Discovery Rule 2.306

(f)  Certification and Transcription; Filing;

Copies.

(1)  If transcription is requested by a party, the
person conducting the examination or the
stenographer must certify on the deposition that
the witness was duly sworn and that the deposition
is a true record of the testimony given by the
witness. A deposition transcribed and certified in
accordance with sub-rule (F) need not be submitted
to the witness for examination and signature.

DISCLAIMER:  THE FOREGOING CIVIL PROCEDURE RULES
ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY.
THE ABOVE RULES ARE CURRENT AS OF APRIL 1,
2019.  PLEASE REFER TO THE APPLICABLE STATE RULES
OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.